480 F.2d 947
 Paul D. PRASHAR and Darlene Prashar, Appellants,
v.
VOLKSWAGEN OF AMERICA, INC., a corporation, and Import
Motors of Chicago, Inc., a corporation, Appellees.
VOLKSWAGENWERK AKTIENGESELLSCHAFT, a corporation, also known
as Volkswagenwerk, G.m.B.H., Appellant,
v.
Paul D. PRASHAR and Darlene Prashar, Appellees.
 Nos. 72-1625, 72-1670.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 11, 1973.
Decided June 27, 1973.
Rehearings Denied July 19, 1973.
 
 Timothy J. Nimick, Sioux Falls, S. D., for Prashar and others.
 George J. Danforth, Jr., Sioux Falls, S. D., for Volkswagen.
 Harold C. Doyle, Sioux Falls, S. D., for Import Motors.
 Before LAY and STEPHENSON, Circuit Judges, and TALBOT SMITH,* Senior District Judge.
 LAY, Circuit Judge.
 
 
 1
 This is a diversity of citizenship case arising in the State of South Dakota. Both appeals revolve around the same basic question-whether compliance with Rule 3 of the Federal Rules of Civil Procedure constitutes "commencement of an action" sufficient to toll the South Dakota statute of limitations. Plaintiffs brought an action to recover for personal injuries incurred on October 5, 1968, while operating a Volkswagen on a South Dakota highway. The defendants were the manufacturer, Volkswagenwerk Aktiengesellschaft; the importer, Volkswagen of America, Inc.; and the regional distributor, Import Motors of Chicago, Inc. The complaint was filed on October 4, 1971, one day prior to the running of the South Dakota statute of limitations, in the office of the clerk of the United States District Court for the District of South Dakota. However, the defendants were not personally served with process until after the applicable statute of limitations had run. Each of the defendants moved for summary judgment alleging that the period of limitations had not been tolled by the filing of the complaint in the federal district court. For under South Dakota law an action is "commenced" when either the summons is served on the defendant or the summons is delivered to the sheriff with the intent that it actually be served.[1] The district court acknowledged that if the action could be deemed "commenced" under the federal rules the applicable period of the statute of limitations would be tolled. However, the trial court felt bound by Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), and Groninger v. Davison, 364 F.2d 638 (8 Cir. 1966),[2] and granted summary judgment to Volkswagen of America and Import Motors, 347 F.Supp. 129. The court denied Volkswagenwerk Aktiengesellschaft's motion for summary judgment, holding that Rule 4(i)(1), Fed.R.Civ.P., governed service on the foreign corporation and since South Dakota had no comparable provision for such service, the filing of the complaint tolled the statute against this foreign corporation. In denying the motion, the district court granted a certificate pursuant to 28 U.S.C. Sec. 1292(b) enabling Volkswagenwerk Aktiengesellschaft to appeal along with the plaintiffs.
 
 
 2
 ____
 
 
 3
 * * *
 
 
 4
 We find that Rule 3 of the Federal Rules of Civil Procedure governs both appeals and order the reinstatement of the action against all defendants.
 
 
 5
 The Ragan case involved a diversity suit brought to recover damages for personal injuries occurring in Kansas. The complaint was filed within the applicable Kansas statute of limitations. However, the summons was not served on the defendant until after the time period had expired. The Kansas statute of limitations provided that an action would be deemed commenced at the time the summons was served. The Supreme Court held that even though the plaintiff had complied with Rule 3 of the Federal rules, the action was nevertheless barred. The Court reasoned that:
 
 
 6
 "Where local law qualifies or abridges it, the federal court must follow suit. Otherwise there is a different measure of the cause of action in one court than in the other, and the principle of Erie R. Co. v. Tompkins is transgressed." Ragan v. Merchants Transfer Co., 337 U.S. at 533, 69 S.Ct. at 1235.
 
 
 7
 Some sixteen years later in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Court was faced with a direct conflict between Federal Rule of Civil Procedure 4(d)(1) and a state law governing service of process. A diversity suit was timely filed in the Massachusetts federal district court. Service of process was made pursuant to Rule 4(d)(1) by leaving copies of the summons and complaint with the defendant's wife at his residence. The defendant urged that the action should be dismissed since the service of process was contrary to state law which required "in hand" delivery of the summons to the defendant. The federal district court, relying on Ragan and Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), granted summary judgment to the defendant. On appeal the Supreme Court reversed. This time the Court did not apply the state law and through Chief Justice Warren wrote:
 
 
 8
 "[I]t cannot be forgotten that the Erie rule, and the guidelines suggested in York, were created to serve another purpose altogether. To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act." Hanna v. Plumer, 380 U.S. at 473-474, 85 S.Ct. at 1145.
 
 
 9
 Some courts have taken umbrage in the Hanna language to believe that Ragan was overruled.[3] Several commentators have joined in this belief.[4] Other courts, such as our own, have disagreed and under circumstances on all fours with Ragan have reluctantly felt compelled to apply the law of Ragan.[5] Undoubtedly the total demise of Ragan would not sadden anyone-perhaps only because of the harshness of the rule to the individual case.[6]
 
 
 10
 However, it is not the prerogative of this court to overrule Ragan. And there should be little doubt as to the verity of Judge Vogel's observation in Groninger: Hanna did not overrule Ragan. The Supreme Court, although perhaps tenuously in the eyes of many, still sought to distinguish Ragan in Hanna. The Court made direct reference to the fact that Ragan did not involve a federal rule as broad as the state rule with which it purportedly clashed,[7] 380 U.S. at 470, 85 S.Ct. 1136, and the Court additionally observed that following Rule 4(d)(1) did not involve, as it did in Ragan, "a situation where application of the state rule would wholly bar recovery . . . ." Id. at 469, 85 S.Ct. at 1143. Thus we reaffirm, as we did in Groninger, that for us to ignore Ragan would abdicate our trust as an inferior federal court bound by higher law. However, contrary to the defendants' urging, this does not conclude the matter.
 
 
 11
 It is recalled that Hanna distinguished Ragan on the ground that Federal Rule 3 was not broad enough to cover the particular problem involved in Ragan. Federal Rule 3 does not attempt to specify that filing tolls the controlling statute of limitations. On the other hand the Kansas statute in Ragan did specifically address itself to the manner of tolling the period of limitations.[8] The significance of this relates to our reading of Ragan that Rule 3 was not controlling since the Kansas commencement of action statute was so intimately bound up with the rights and obligations created by the state statute of limitations that the state law governed under Erie principles.
 
 
 12
 In this regard, the Ragan Court specifically considered the fact that under Kansas law the commencement of actions was an integral part of the statute of limitations. Ragan, supra, 337 U.S. at 532, 534, 69 S.Ct. 1233, 93 L.Ed. 1520. In the instant case it is urged that the South Dakota statute on commencement of action is not an integral part of the statute of limitations. Although contained in the same chapter along with the statute of limitations,[9] the South Dakota statute defining when an action is commenced does not refer to the limitations statute. We deem it significant that the South Dakota Supreme Court has held that the commencement of actions statute is a general statute. Thus in Taylor v. McCarty, 68 S.D. 510, 4 N.W.2d 816, 817-818 (1942), the South Dakota Supreme Court specifically observed:
 
 
 13
 "SDC 33.0202 [commencement of action statute] appears as part of a chapter of our Code dealing with the limitations of actions. Similar provisions have been construed by other courts as only fixing the time of commencement of the action for the purpose of applying the statute of limitations. See Wait's New York Practice Simplified, 4th Ed., Vol. 1, p. 717; H.L. Spencer Co. v. Koell, 91 Minn. 226, 97 N.W. 974. However, in the case of Tabour Realty Co. v. Nelson, et al., 56 S.D. 405, 228 N.W. 807, the quoted statute was interpreted as a rule of general application in fixing the commencement of actions. That interpretation has been adopted by the Legislature through enactment of the South Dakota Code of 1939 (In re Gooder's Estate, S.D., [68 S.D. 415], 3 N.W.2d 478), and we are not at liberty to reconsider its construction."[10]
 
 
 14
 Even though one may conclude that the South Dakota commencement statute is not an integral part of that state's statute of limitations, the question remains whether this should constitute a material difference. The defendants urge that it does not since Ragan stressed that "where one is barred from recovery in the state court, he should likewise be barred in the federal court," 337 U.S. at 532, 69 S.Ct. at 1234, and consequently, it is immaterial whether or not the "commencement" provision was or was not intended to be an integral part of the statute of limitations. Cf. 2 Moore, Federal Practice Sec. 3.07[4.-3-1] at 779 (2d ed. 1970).
 
 
 15
 In applying Ragan and its analysis of Erie and Guaranty Trust, we adhere to Chief Justice Warren's admonition in Hanna that the "out-come determination" test cannot be read without reference to the twin-aims of Erie: (1) discouragement of forum shopping and (2) avoidance of inequitable administration of the laws. 380 U.S. at 468, 85 S.Ct. 1136.
 
 
 16
 When Federal Rule 3 and the South Dakota commencement statute are examined as "housekeeping rules" it is obvious that we are dealing only with a mode of enforcing state-created rights.[11] There is little or no encroachment on state policy when we adopt one rule over the other. The manner in which the tolling statute operates is primarily designed to put litigants on notice that suit is being filed. As Justice Black observed in Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962):
 
 
 17
 "When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure."
 
 
 18
 When considered in this light there is little likelihood that the federal rule would cause a plaintiff to choose the federal court. Compare Byrd v. Blue Ridge Cooperative, Inc., 356 U.S. 525, 536-540, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). Under South Dakota law, at the time of filing the complaint in federal court the limitation period was still running in the state court. Cf. Sylvestri v. Warner & Swasey Co., 398 F.2d 598, 606 (2 Cir. 1968). All that was necessary under state law to toll the statute would have been to deliver the summons to the sheriff in the county wherein the defendant corporations were doing business with the intent that the summons actually be served within sixty days. See SDCL Ann. Sec. 15-2-31. Surely this additional act is not so substantial to motivate the plaintiff to choose one forum over another. As has often been said, federal diversity actions can never be identic to those carried out in state form. See Atkins v. Schmutz Manufacturing Company, 435 F.2d 527, 536 (4 Cir. 1970). However, even where the facts might favor the choice of the federal forum, pragmatism requires recognition of Mr. Justice Harlan's observation that "litigants often choose a federal forum merely to obtain what they consider the advantages of the Federal Rules of Civil Procedure or to try their cases before a supposedly more favorable judge." Hanna v. Plumer, 380 U.S. at 475, 85 S.Ct. at 1146, 14 L.Ed.2d 8. Moreover, we note that Erie was borne out of the equal protection problems generated in Swift v. Tyson, 41 U.S. (16 Pet) 1, 10 L.Ed. 865 (1842).[12] This constitutional concern was intrinsically coupled with the vital recognition of the necessary bridling of encroaching federalism in areas of state policy. As Mr. Justice Harlan stated, the primary concern in Erie was the choice of rule which "would substantially affect those primary decisions respecting human conduct which our constitutional system leaves to state regulation." Hanna v. Plumer, 380 U.S. at 475, 85 S.Ct. at 1146.[13] The Supreme Court in Byrd v. Blue Ridge Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), lent further explication to this principle. An injured workman sued in tort in federal court and the defendant pleaded immunity because the plaintiff allegedly was a statutory employee under workmen's compensation law. The basic issue was whether the plaintiff was entitled in federal court to have the factual issue presented to a jury or following state law, tried solely to a judge. Mr. Justice Brennan observed:
 
 
 19
 "We find nothing to suggest that this rule [that the defense immunity of a statutory employer was a matter to be decided by the court] was announced as an integral part of the special relationship created by the statute. Thus the requirement appears to be merely a form and mode of enforcing the immunity . . . and not a rule intended to be bound up with the definition of the rights and obligations of the parties." Byrd v. Blue Ridge, 356 U.S. at 536, 78 S.Ct. at 900.
 
 
 20
 The defendants have not pointed to, nor have we found, any state policy expressed in South Dakota similar to that found by the court of appeals in Merchants Transfer & Warehouse Co. v. Ragan, 170 F.2d 987 (10 Cir. 1948), where the Kansas statute of limitations was construed to be integrated with the rule relating to commencement of actions. Cf. Isaacks v. Jeffers, 144 F.2d 25 (10 Cir. 1944), cert. denied, 323 U.S. 781, 65 S.Ct. 270, 89 L.Ed. 624. Consequently, application of Rule 3 to the South Dakota statute of limitations does not alter "the mode of enforcement of state-created rights in a fashion sufficiently 'substantial' to raise the sort of equal protection problems to which the Erie opinion alluded." Hanna v. Plumer, supra, 380 U.S. at 469, 85 S.Ct. at 1143.
 
 
 21
 We conclude that it is only when a state legislates a rule regarding the commencement of action as an integral part of the statute of limitations that a state policy making a mode of enforcing a state-created right intrinsically material to the right involved becomes clearly discernible and substantial. It is only then that Erie principles as set forth in Ragan must govern the litigation. Cf. Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 212, 60 S.Ct. 201, 84 L.Ed. 196 (1939).[14]
 
 
 22
 Having found SDCL Ann. Secs. 15-2-30 and 15-2-31 not to be so intrinsically related to the rights flowing from the state statute of limitations, we conclude that pursuant to the dictates of Hanna v. Plumer, supra, Rule 3 must control the manner of tolling the statute of limitations. In accord, Chappell v. Rouch, 448 F.2d 446 (10 Cir. 1971).
 
 
 23
 The judgment in 72-1625 is reversed and the actions are ordered reinstated; the judgment in 72-1670 is affirmed for the reasons stated herein.
 
 
 
 *
 The Honorable Talbot Smith, Senior United States District Judge, Western District of Michigan, sitting by designation
 
 
 [1]
 The South Dakota Compiled Laws Ann. (1967) provide:
 "15-6-3-COMMENCEMENT OF ACTION
 "A civil action is commenced as provided in Secs. 15-2-30 and 15-2-31.
 "15-2-30. Commencement of action by service of summons-Summons on codefendant.-An action is commenced as to each defendant when the summons is served on him, or on a codefendant who is a joint contractor or otherwise united in interest with him.
 "15-2-31. Attempted commencement of action by delivery of summons to sheriff-Publication or service following attempt.-An attempt to commence an action is deemed equivalent to the commencement thereof when the summons is delivered, with the intent that it shall be actually served, to the sheriff or other officer of the county in which the defendants or one of them, usually or last resided; or if a corporation be defendant, to the sheriff or other officer of the county in which such corporation was established by law, or where its general business was transacted, or where it kept an office for the transaction of business. Such an attempt must be followed by the first publication of the summons, or the service thereof, within sixty days."
 
 
 [2]
 In Groninger, an action for personal injuries was filed in the federal district court one day before Iowa's two-year statute of limitations was to expire. The defendant moved for summary judgment on the ground that the suit had not been commenced within the two-year period since Rule 49 of the Iowa Rules of Civil Procedure specifically stated that an action was deemed commenced for purposes of tolling the statutes of limitations by serving the defendant with an original notice. The district court granted the defendant's motion and this court affirmed-concluding that the case was controlled by the Supreme Court's opinion in Ragan v. Merchants Transfer & Warehouse Co., supra
 
 
 [3]
 See, e. g., Grabowski v. United States, 294 F.Supp. 421 (D.Wyo.1968); Elizabethtown Trust Co. v. Konschak, 267 F.Supp. 46 (E.D.Pa.1967); Sylvestri v. Warner & Swasey Co., 244 F.Supp. 524 (S.D.N.Y.1965), aff'd, 398 F.2d 598 (2 Cir. 1968); cf. Hardy v. Green, 277 F.Supp. 958 (D.Mass.1967); Newman v. Freeman, 262 F.Supp. 106 (E.D.Pa.1966); Callan v. Lillybelle, Ltd., 39 F.R.D. 600 (S.D.N.Y.1966)
 
 
 [4]
 See, e. g., 2 Moore, Federal Practice Sec. 3.07 [4.-3-1] at 37 (1972 Supp.); Stason, Choice of Law Within the Federal System: Erie versus Hanna, 52 Cornell L.Q. 377, 397 (1967)
 
 
 [5]
 In Groninger v. Davison, 364 F.2d at 642, Judge Vogel observed that "[w]hile it is difficult to reconcile Hanna v. Plumer . . . with the holding in Ragan, we nevertheless must conclude that the majority of the Supreme Court . . . felt that it was not an overruling of Ragan." See also Sylvester v. Messler, 351 F.2d 472 (6 Cir. 1965), cert. denied, 382 U.S. 1011, 86 S.Ct. 619, 15 L.Ed.2d 526 (1966); Anderson v. Phoenix of Hartford Insurance Co., 320 F.Supp. 399 (W.D.La.1970); Decker v. Fox River Tractor Co., 309 F.Supp. 648 (E.D.Wis.1970); O'Shea v. Binswanger, 42 F.R.D. 21 (D.Md.1967); cf. Anderson v. Papillion, 445 F.2d 841 (5 Cir. 1971)
 
 
 [6]
 There are probably many who share Mr. Justice Harlan's concurring reasoning in Hanna:
 "At most, application of the Federal Rule would have meant that potential Kansas tort defendants would have to defer for a few days the satisfaction of knowing that they had not been sued within the limitations period. The choice of the Federal Rule would have had no effect on the primary stages of private activity from which torts arise, and only the most minimal effect on behavior following the commission of the tort. In such circumstances the interest of the federal system in proceeding under its own rules should have prevailed." 380 U.S. at 477, 85 S.Ct. at 1147.
 
 
 [7]
 The Court, well aware of the existence of Ragan, noted that:
 "[T]his Court has never before been confronted with a case where the applicable Federal Rule is in direct collision with the law of the relevant State . . . ." Hanna v. Plumer, 380 U.S. at 472, 85 S.Ct. at 1144.
 
 
 [8]
 Kan.Gen.Stats.1935, Sec. 60-308 provided:
 "An action shall be deemed commenced within the meaning of this article [statute of limitations], as to each defendant, at the date of the summons which is served on him, or on a codefendant who is a joint contractor, or otherwise united in interest with him. Where service by publication is proper, the action shall be deemed commenced at the date of the first publication. An attempt to commence an action shall be deemed equivalent to the commencement thereof within the meaning of this article when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons within sixty days."
 
 
 [9]
 South Dakota Compiled Laws Ann. Sec. 2-14-9 (1967) specifically provides that "[s]ource notes, cross-references, and titles whether designating entire titles, parts, chapters, sections, or subdivisions, constitute no part of any statute."
 
 
 [10]
 That the commencement of action statute is general in nature and affects statutes other than limitations is further exemplified by SDCL Ann. Sec. 15-6-26(a) which states that "[a]fter commencement of the action the deposition may be taken without leave of court. . . ." See also Tabour Realty Co. v. Nelson, 56 S.D. 405, 228 N.W. 807 (1930) (garnishment proceedings); Taylor v. McCarty, supra (appointment of receiver)
 
 
 [11]
 "Erie and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules. Cf. Herron v. Southern Pacific Co., 283 U.S. 91, [51 S.Ct. 383, 75 L.Ed. 857]. 'When, because the plaintiff happens to be a non-resident, such a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic.' Guaranty Trust Co. v. York, supra, 326 U.S. at 108, [65 S.Ct. at 1469]; Cohen v. Beneficial Loan Corp., 337 U.S. 541, 555 [69 S.Ct. 1221, 1229, 93 L.Ed. 1528]." Hanna v. Plumer, 380 U.S. at 473, 85 S.Ct. at 1145
 
 
 [12]
 The concern of Erie was with discrimination against citizen-defendants. Ragan similarly involved a citizen-defendant. Here, however, as in Sylvestri v. Warner & Swasey Co., 398 F.2d at 606, we are dealing with non-resident defendants and it is difficult to assess any discrimination against the citizen-plaintiffs by reason of allowing the action to proceed in the federal court
 
 
 [13]
 Thus, even by here applying Rule 3 the federal court is still governed by the timeperiods set forth in the state statute of limitations. See Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)
 
 
 [14]
 Of course, the troublesome question is what difference does it make whether a state reads two rules together to reach a given result or legislates one rule which embodies the two to reach the same result. We recognize merit to Professor Moore's criticism of the approach taken here. See 2 Moore, Federal Practice Sec. 3.07 [4.-3-1] at 779 (2d ed. 1970)
 Yet we think his Erie answer based on "outcome" too simplistic in view of Byrd and Hanna. It would have caused less consternation to all if Mr. Justice Harlan's views in Hanna would have been adopted by the majority, but the fact remains they were not. In Hanna the Court recited language of the Fifth Circuit which reads:
 "'One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules. This is especially true of matters which relate to the administration of legal proceedings, an area in which federal courts have traditionally exerted strong inherent power, completely aside from the powers Congress expressly conferred in the Rules. The purpose of the Erie doctrine, even as extended in York and Ragan, was never to bottle up federal courts with "outcome-determinative" and "integral-relations" stoppers-when there are "affirmative countervailing [federal] considerations" and when there is a Congressional mandate (the Rules) supported by constitutional authority.' Lumbermen's Mutual Casualty Co. v. Wright, 322 F.2d 759, 764 (C.A. 5th Cir. 1963)." 380 U.S. at 472-473, 85 S.Ct. at 1145.
 Thus, perhaps our approach runs counter to the "integral-relations" stoppers concern of the Fifth Circuit. However, to adopt this reasoning in the present case without further analysis would require us to say that Hanna overruled Ragan, which, as we have said, we refuse to do. Nevertheless, we feel a determination must be made in every case as to whether the state has taken a rule of practice and substantially intertwined that rule with the basic right of recovery. When this is so, the rule cannot be viewed as affecting only the mode of relief, and the "countervailing considerations" of a desired uniform practice in a federal court must yield to "the policy of uniform enforcement of state-created rights and obligations." Cf. Byrd v. Blue Ridge, supra, 356 U.S. at 537-538, 78 S.Ct. at 901.