Charles M. WALDEN and Cathy Walden Kable, Executor and Executrix of the Estates of Richard M. Walden and Betty Lou Walden, Deceased, Plaintiffs,

v.

TULSAIR BEECHCRAFT, INC.; and Beech Aircraft Corporation, Defendants.

Civ. No. 82–5049.

United States District Court, W.D. Arkansas, Fayetteville Division.

Nov. 1, 1982.

John F. Forster, Jr., Wallace, Hilburn, Clayton, Calhoon & Forster, Ltd., North Little Rock, Ark., and Tom H. Davis, Byrd, Davis & Eisenberg, Austin, Tex., for plaintiffs.

Pat Goss, Wright, Lindsey & Jennings, Little Rock, Ark., for Beech Aircraft Corp.

Michael E. Hale, Barber, McCaskill, Amsler, Jones & Hale, Little Rock, Ark., for Tulsair Beechcraft, Inc.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

*Introduction*

On February 9, 1982, plaintiffs instituted this action by filing a complaint in the Circuit Court of Washington County, Arkansas. On May 13, 1982, this Court quashed the service effectuated by the

plaintiffs as not complying with state law. The second attempt to serve the complaint on Beech Aircraft Corporation was not completed until June 7, 1982, 118 days after filing.

Beech Aircraft Corporation, on June 23, 1982, moved for judgment on the pleadings, pursuant to Rule 12(c), Fed.R.Civ.P., because service was not effectuated until more than sixty (60) days after the filing of the complaint, and because the statute of limitations expired in the interim. Plaintiffs have responded and the issues are ripe for resolution.

### Discussion

Defendant, Beech Aircraft Corporation (hereinafter "Beech"), urges that Ark.R. Civ.P. 3 requires that service be had within sixty (60) days of filing the complaint, else there must be a new filing which does not "relate back." Beech argues that the statute of limitations with the longest time period which may be applicable is the three-year limit found in Ark.Stat.Ann. § 27–907. As the death occurred on February 9, 1979, Beech asserts that valid filing must have been effected prior to February 9, 1982. Since there was no further attempted service until June 7, 1982, Beech contends that the action is barred.

However, for the reasons set forth herein, this result cannot be reached by this Court.

■ The Rules of Decision Act, 28 U.S.C. § 1652 (1966) states:

> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

Under this statute a federal court must apply state law in deciding the merits of a diversity case.

Until the Supreme Court's decision in *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), it was hornbook law that the jurisdiction of the federal courts depended entirely on the Constitution and acts of Congress and that state law could not limit the federal judicial power. *See David Lupton's Sons Co. v. Automobile Club of America,* 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177 (1912); *Barrow Steamship Co. v. Kane,* 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964 (1898); *Chicago & N.W. Ry. v. Whitton,* 80 U.S. (13 Wall.) 270, 20 L.Ed. 571 (1871); *Union Bank v. Vaiden,* 59 U.S. (18 How.) 503, 15 L.Ed. 472 (1855); *Suydam v. Broadnax,* 39 U.S. (14 Pet.) 67, 10 L.Ed. 357 (1840).

With the advent of *Erie,* a wholesale re-evaluation of the interrelationship of federal and state law began. *Erie* itself simply extended the Rules of Decision Act to state judge-made law, so that a federal court was required to apply state law as pronounced not only by legislatures but also by state judges.

It soon became clear that *Erie* was much more than a holding, as the "*Erie* doctrine" became a broad principle governing the distribution of federal and state law-making power. In *Guaranty Trust Co. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945), the Supreme Court announced that

> the intent of [*Erie*] was to ensure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a state court ... a block away.

*York,* however, is not the Supreme Court's final word on "the policy of *Erie.*" In *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), the Court held that a federal court sitting in a diversity case should grant a jury trial on a crucial issue of fact which the state court would have determined without a jury. The Court limited *York* by holding that although application of a state rule would be required of federal courts in diversity cases when the rule is "bound up with [the] rights and obligations" at issue, federal courts need

not adopt state procedural rules which did not have substantive import and which conflicted with countervailing federal interests.

Furthermore, *Byrd* cited the pre-*Erie* case of *Herron v. Southern Pacific Co.,* 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857 (1931), for the proposition that "state laws cannot alter the essential character or function of a federal court." 283 U.S. at 94, 51 S.Ct. at 384, *cited at* 356 U.S. at 539, 78 S.Ct. 893. Thus, the Rules of Decision Act was interpreted as mandating strict adherence to state law which had substantive content, but not requiring mimicry of state procedural rules which had little substantive content and were designed primarily for purposes of state judicial administration.

This view of the Rules of Decision Act was reiterated in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). While resting its decision on the Rules Enabling Act, the Supreme Court went out of its way to state that

> it is doubtful that, even if there were no Federal Rule making it clear that in-hand service is not required in diversity actions, the *Erie* rule would have obligated the District Court to follow the Massachusetts procedure. "Outcome-determination" analysis was never intended to serve as a talisman. 380 U.S. at 466–467, 85 S.Ct. at 1141.

Thus, the strict "outcome-determinative" test was laid to rest as the sole criterion for determining when the Rules of Decision required application of a state rule by a federal court. The key considerations were two: maintaining uniformity in the interpretation of a state's substantive law (so as to avoid forum-shopping) and preventing the accident of citizenship from unfairly affecting the outcome of a diversity case.

It is clear that there is no sixty-day limitation on service in the federal rules. See Rule 3, Fed.R.Civ.P.

Rule 3 of the Arkansas Rules of Civil Procedure provides:

### COMMENCEMENT OF ACTION

A civil action is commenced by filing a complaint with the clerk of the proper court who shall note thereon the precise date and time of filing; provided, that an action shall not be deemed to have been commenced as to any defendant not served with process in accordance with these rules within sixty (60) days of the filing of the complaint, unless within that time the person filing the complaint has made an effort, that is noted of record in the clerk's office, to obtain service by a different method provided for in Rule 4. In no event shall the time for obtaining service be extended beyond ninety (90) days without leave of court and for good cause shown.

■ Beyond question, this state rule is a procedural rule defining and governing the "commencement of action(s)." Thus, it is arguably a procedural rule not intimately bound up with the substantive right or obligation being asserted, even though its application might substantially change the outcome of the litigation. In such cases, the federal court should determine whether state interests in favor of applying the state rule outweigh countervailing federal considerations against application of the rule. *Miller v. Davis,* 507 F.2d 308 (6th Cir.1974).

There has been a great degree of diversity of opinion as to whether state law or federal law governs when an action is commenced in a diversity case. Several cases have held that Federal Rule 3 will not result in forum shopping and will not change the character or result of the litigation on the merits and, accordingly, have applied it in diversity cases. *Sylvestri v. Warner & Swasey Co.,* 398 F.2d 598 (2nd Cir.1968); *Chappell v. Rouch,* 448 F.2d 446 (10th Cir. 1971) (Kansas "commencement" statute purely procedural and not integral part of state statute of limitations); *Prashar v. Volkswagen of America, Inc.,* 480 F.2d 947 (8th Cir.1973) (South Dakota "commencement" statute not intrinsically related to state statute of limitations); *Smith v. Peters,* 482 F.2d 799 (6th Cir.1973) (state commencement statute purely procedural); *Ingram v. Kumar,* 585 F.2d 566 (2nd Cir.1978) (reaffirming *Sylvestri, supra* ); *cf. Reising-*

er v. Cannon, 127 F.Supp. 50 (D.Conn.1954); Elizabethtown Trust Co. v. Konschak, 267 F.Supp. 46 (E.D.Pa.1967); Grabowski v. United States, 294 F.Supp. 421 (C.D.Wyo. 1968); Wheeler v. Standard Tool & Mfg: Co., 311 F.Supp. 1177 (S.D.N.Y.1970); New-hart v. Helliek Coffee Co., 14 Fed.R.Serv.2d 1491 (E.D.Pa.1971); Alford v. Whitsel, 52 F.R.D. 327 (N.D.Miss.1971); McCrea v. General Motors Corp., 53 F.R.D. 384 (D.Mont. 1971); Bratel v. Kutsher's Country Club, 61 F.R.D. 501 (S.D.N.Y.1973); Zarcone v. Condie, 62 F.R.D. 563 (S.D.N.Y.1974); Schinker v. Ruud Mfg. Co., 386 F.Supp. 626 (N.D. Iowa 1974).

Others, however, held, as did the Supreme Court in Walker v. Armco Steel Corp., 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1979), that the state law defining "commencement" must be applied if it is an "integral part" of the state statute of limitations.

■ Thus, the true test is whether the state definition of "commencement" is an integral part of the statute of limitations. It is clear that in some cases it is, Walker, supra, and in some cases it is not, Prashar, supra.

In Prashar, the Eighth Circuit Court of Appeals held that the South Dakota commencement statute was a general statute, a rule of general applicability. See SDC 33.-0202. Said the Court:

When Federal Rule 3 and the South Dakota commencement statute are examined as "housekeeping rules" it is obvious that we are dealing only with a mode of enforcing state-created rights. There is little or no encroachment on state policy when we adopt one rule over the other. The manner in which the tolling statute operates is primarily designed to put litigants on notice that suit is being filed. As Justice Black observed in Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962):

"When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure."

Defendants urge that the Supreme Court's decision in Walker, supra, controls this issue and mandates that we apply Arkansas' sixty-day rule. The Court does not agree. In Walker, the Supreme Court held that state law which defines when an action is deemed "commenced" for statute of limitations purposes must be applied in a diversity action where the "commencement" concept is "an integral part of the (state) statute of limitations." Id. 446 U.S. at 743, 100 S.Ct. at 1981.

In Walker, the state law did not deem the action commenced, for purposes of the statute of limitations, until service of the summons on the defendant. Okla.Stat. tit. 12, § 97 (1971). If the complaint was filed within the limitations period, the filing date was the "commencement" date so long as service was effected within sixty days, if the statute ran in the interim.

However, in Arkansas, as in the federal courts, it is clear that "filing" normally is "commencement." The Oklahoma statute at issue in Walker declared, as a matter of substantive law, that "service" is "commencement of an action." An exception to this rule applied if service was effected within sixty days, so long as the complaint was filed within the limitations period. As the exception was not applicable, under state substantive law the statute of limitations precluded the action.

Arkansas' statutory scheme is quite different although superficially similar. There is no question but that this action was timely filed under both the Arkansas and Federal Rules. The only question is whether that portion of Rule 3 of the Arkansas Rules of Civil Procedure requiring service within sixty or ninety days need be applied.

The case was removed to this Court prior to the expiration of the sixty-day period. The initial service which the Court quashed on the basis of statutory technicality was timely. After defendants moved to quash

service on March 26, 1982, and March 29, 1982, the Court did not rule on the motions until May 14, 1982. Only then did plaintiffs know that service, although constitutionally sufficient, was technically statutorily deficient, based upon the Court's interpretation of statutory service requirements. Less than three weeks later, plaintiffs obtained valid service on the defendants.

As noted, Rule 3 provides that an action is commenced when filed, but that an action is not deemed commenced as to any defendant not served within sixty days, unless the plaintiff has made an effort to obtain service by a different method provided for in Rule 4. However, the last sentence of Rule 3 unambiguously states: "In no event shall the time for obtaining service be extended beyond ninety (90) days without leave of court and for good cause shown."

This Court's order of May 14, 1982, stated: "Plaintiffs are directed to properly effectuate service within a reasonable time from the date of this order or the cause will be dismissed."

Forcing a plaintiff to make repeated attempts at service after the filing of a Rule 12(b)(5) motion and before the motion to quash service has been decided is highly unfair to parties acting reasonably and in good faith, albeit technically incorrectly, where service is constitutionally sufficient and actual notice is undisputed.

■ Although the Court did not purport to act pursuant to Arkansas Rule of Civil Procedure 3 in its May 14, 1982, order, we think it clear that this Court there found "good cause shown" and granted "leave of court" for service outside of the ninety-day period.

The Court is convinced that plaintiffs acted reasonably diligently, if technically incorrectly, with respect to the March, 1982, service, and diligently and correctly with respect to the June, 1982, service.

The Reporter's Notes to Rule 3 of the Arkansas Rules of Civil Procedure state:

If actual service is not made within 60 days, the Court may extend the time for service, thus protecting the plaintiff against the running of the statute where there is good cause to do so.

\* \* \* \* \* \*

This rule will effectively cause the decision whether delay in service is justified to be made within 60 days of filing rather than at some later indefinite time.

As noted, the issues of propriety of the former service and good cause for extension of service were submitted to the Court within sixty (60) days of filing. The Court ruled on the issues as promptly as the Court's docket and schedule permitted. To require the plaintiff to file a lawsuit, effectuate service, await a motion to quash, respond to the motion, await the Court's resolution, and effectuate new service, all within sixty days, is somewhat oppressive. A plaintiff cannot raise the issue of validity of his or her own service.

Once service is obtained, a defendant has twenty (20) days in which to file a Rule 12(b)(5) motion. Under local rules of this Court, a plaintiff normally has ten (10) days in which to respond after being served with the motion. Local Rule 20 of the United States District Courts for the Eastern and Western Districts of Arkansas. There is no specific state rule which requires response within a certain time.

As far as we can ascertain, plaintiffs pursued their claims and theories diligently. Assuming same day service, this kind of issue could not possibly be ripe for resolution until thirty (30) days after filing, and more likely, would not be resolved until the expiration of the 60-day period.

■ The Court does not believe that Arkansas Rule 3 was intended to accomplish this result in the factual setting present. The Court finds that even if Arkansas Rule 3 were applied to the facts at hand, the service effected herein would be timely and permissible.

Thus, Arkansas Rule of Civil Procedure 3 is the direct opposite of the state statute at issue in *Walker.* The Oklahoma statute deemed "service" to be "commencement" with a certain narrow exception which was not applicable in *Walker.* The Arkansas

rule deems "filing" to be "commencement," with a certain narrow exception. Thus, in *Walker* the action was untimely at the outset, while in the present action, the action was timely filed under both the Arkansas and Federal systems.

The state policy at issue here is not in defendants' favor. Where the identity of a tortfeasor is unknown, for example, a "John Doe" complaint may be filed which effectively tolls the running of the statute of limitations. Ark.Stats.Ann. §§ 37–234, 37–235. There appears to be no sixty-day service requirement, or any specific time period in which service must be effected. If the Arkansas legislature desires to preserve a cause of action where the identity of the tortfeasor is unknown, it seems unlikely that they would intend that an action be barred when (1) it is timely filed within the limitations period; (2) defendants have actual receipt and actual notice of the proceedings by constitutionally sufficient process; (3) the process is only technically invalid because the wrong statute was relied upon in attempting service; and (4) plaintiffs have acted as diligently as possible in all respects, in good faith, and in accordance with the directions of this Court.

■ This Court concludes that it is only when a state legislates a rule regarding the commencement of an action as an integral part of the statute of limitations that a state policy making a mode of enforcing a state-created right involved becomes clearly discernible and substantial. As the Court said in *Prashar:* "It is only then that *Erie* principles as set forth in *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949) must govern the litigation."

This is the rule the Supreme Court accepted in *Walker:* "In contrast to Rule 3, the Oklahoma statute is a statement of a substantive decision by that State that actual service on, and accordingly actual notice by, the defendant is an integral part of the several policies served by the statute of limitations."

In contrast, again Arkansas has resoundingly rejected the actual notice theory. Ar-

kansas Rule 3 changed Arkansas law over three years ago. Former Arkansas law, Ark.Stat.Ann. § 27–301 (Repl.1962), provides that an action was commenced by filing a complaint and placing it and a summons in the hands of the sheriff of the proper county. Arkansas has never had an "actual notice" standard for commencement. Under present law, a plaintiff need only obtain service within sixty days, or make an effort noted of record to obtain service by a different method, or obtain leave of court.

■■ Thus, the statute of limitations is tolled under state law upon filing so long as there is (1) actual service, or (2) diligent effort of alternate service, or (3) leave of court. Obviously then, notice to the defendant is not the sole consideration. Good faith, diligence and fairness are other important factors in determining "commencement" under state law.

The "commencement" statute is a general statute not intrinsically related to the statute of limitations contained in Ark.Stat. Ann. § 27–907, enacted in 1957.

This statute of limitations is a part of the substantive rights created by the statute. It is a statute of limitations of very specific applicability. This statute of limitations applies only to wrongful death actions. Wrongful death actions in Arkansas have their own "saving" statute as well: " . . . If a non-suit be suffered, such action shall be brought within one (1) year from the date of such non-suit without regard to the date of the death of the person alleged to have been wrongfully killed." Ark.Stat.Ann. § 27–907 (Supp.1981).

Thus, there appears to be no state policy which would be served by dismissal of this action. A dismissal of this action due to violation of Arkansas Rule 3 would conceivably be such a "non-suit" although the Court does not so hold because it is not necessary to this decision. See Arkansas Rule of Civil Procedure 41(b) and Reporter's Notes. Clearly, Arkansas wrongful death and survival law is a narrow, specific, self-contained body of legislation. Arkan-

sas Rule 3 is a broad statement of general policy, which only indirectly affects the applicable statute of limitations, and possibly has no bearing at all on the plaintiffs' ability to have this case ultimately heard by this Court.

Accordingly, while we recognize that *Walker* is, of course, mandatory precedent, it is not on point. Rather, *Prashar* is the mandatory precedent practically identical to this cause. Therefore, inasmuch as we have concluded that Arkansas Rule 3 is not an integral part of the wrongful death statute of limitations, Arkansas Rule 3 is not controlling and Federal Rule of Civil Procedure 3 is instead. Thus, the action was timely "commenced" and the service effected was proper.

Alternatively, even if Arkansas Rule 3 is to be applied to the case at bar, since plaintiffs acted as diligently as possible, in good faith, with good cause shown, and at the direction of this Court, plaintiffs' action would not be barred thereby.

Hence, defendants' motions will be denied.

The Court reserves ruling on the choice of law issue presented, and requests that the parties submit a verbatim translation of the relevant Dominican Republic statutes, stipulated as to accuracy by all counsel, within twenty-one (21) days from the date of this opinion.

A separate order in accordance with this memorandum opinion will be concurrently entered.